**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FIRST TIME VIDEOS LLC,

       Plaintiff,                                Case No. 8:12-CV-01686-MSS-AEP

    v.

PAUL OPPOLD,

       Defendant.
_____/

## PLAINTIFF SUNLUST PICTURES, LLC'S OPPOSITION TO DEFENDANT PAUL OPPOLD'S OMNIBUS MOTION TO DISMISS

      Plaintiff First Time Videos LLC, by and through its undersigned counsel, hereby files this Opposition to Defendant Paul Oppold's Omnibus Motion to Dismiss.

### INTRODUCTION

      Defendant has filed an Omnibus Motion to Dismiss Plaintiff's Complaint. Before addressing Defendant's specific arguments, Plaintiff first turns to the general tenor of Defendant's Omnibus Motion. Throughout the Motion, Defendant makes a multitude of baseless, irrelevant and personal attacks upon Plaintiff and Plaintiff's counsel to throw smoke into the eyes of this Court. By its own admission, these attacks have no merit, nor any factual or evidentiary support. For example, Defendant makes statements throughout his memorandum such as "this case was *likely* retaliatory in nature…," and "This fact was *deduced*…," "On strictly a *hunch*…," clearly demonstrating the lack of support for his statements, while making other outlandish accusatory statements with no shred of support. (ECF No. 14 at 5, 19.) In fact, in asserting that "Based upon information and belief *but without opening or even inspecting the PDF documents filed in this case*, all or most of the documents filed in this case by the Plaintiff were both drafted

and placed into final form by agents of Prenda Law without any attribution," Defendant actually admits that he has not even reviewed the documents filed in this case, yet he continues to argue vigorously through speculation what those documents might have said. (ECF No. 14 at 19.) Overall, Defendant's Motion is an affront to the dignity of the Court and of the legal system generally, as Plaintiff will describe below.

Defendant first argues that Plaintiff's complaint should be dismissed because it was filed in the incorrect district, allegedly violating 28 U.S.C. § 1406(a), and "that arguments for transfer under 1404(a) for an inconvenient venue fail when made by a non-resident Plaintiff who chose to original filing location as a matter of logical deduction and judicial need to prevent forum shopping." (ECF No. 14 at 8.)  Second, Defendant argues that Plaintiff's complaint should be dismissed because it "failed to inform the court of" an allegedly related case arising out of the Southern District of Florida. (ECF No. 14 at 9).  Third, Defendant argues that Plaintiff's motion should be dismissed because "the Plaintiff, and other agents of the Plaintiff…were malicious and show great evidence of bad faith." (ECF No. 14 at 13.) Defendant's fourth argument is that Plaintiff's Complaint should be dismissed "for failure to state a cause of action under 12(b)(6)." (ECF No. 14 at 15.) Defendant's fifth argument is that all of Plaintiff's papers and pleadings should be struck "pursuant to Local Rule 1.05(d) and FRCP Rule 11(a)." (ECF No. 14 at 15.) Defendant's arguments fall far short.[1]

---

[1] Defendant appears to divide its "Omnibus Motion" into several different motions—i.e. "Memorandum on Transfers under 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a)," "Willful Violation of MCFL Rule 1.04 and Order at Docket Entry #5," "Dismissal as Sanction," "Motion To Dismiss for Failure to State a Cause of Action Under 12(b)(6)," and "Motion to Strike All Papers and Pleadings pursuant to Local Rule 1.05(d) and FRCP Rule 11(a)." All motions are geared toward the dismissal of Plaintiff's complaint.  In this Response, while responding to each argument herein, Plaintiff does not address them as separate motions, but, to minimize the Court's confusion, as merely separate arguments, not motions, in a single memorandum.

## DISCUSSION

### I. TRANSFER IS THE APPROPRIATE REMEDY IN THESE CIRCUMSTANCES

Before addressing Defendant's arguments, it should be noted that Defendant's response in opposition to Plaintiff's is both untimely and disingenuous. First, Plaintiff filed its Motion to Transfer on August 20, 2012. (ECF No. 11.) Defendant had its opportunity to respond to that motion, but failed to do so within the time allotted under the local rules. Instead, Defendant disguises its tardy response by wrapping it into this "Omnibus Motion." (ECF No. 14.) This discrete response should be disregarded for tardiness alone. Second, the Court should recognize that, earlier in this litigation, Defendant's counsel and Plaintiff's counsel discussed this issue, and, after some consideration, Plaintiff's counsel agreed to file the pending Motion to Transfer. (ECF No. 11.) Now, Defendant, with no prior warning, disingenuously argues against the transfer that Defendant originally requested. Defendant's counsel knew of this clerical error previously, suggested this motion be filed, and now conveniently argues against the transfer that it first proposed.

Defendant argues that the appropriate remedy for Plaintiff's clerical error of filing its Complaint in the wrong division is dismissal of Plaintiff's Complaint. (ECF No. 14 at 7.) Plaintiff argues here, as it did in its Motion for Transfer, and had previously discussed with Defendant's attorney, that Plaintiff has been diligent in rectifying what was essentially a clerical mistake, and that dismissal of the case would be contrary to the interest of justice. Defendant correctly asserts that the original venue was improper under Local Rule 1.02(c), but that is the very mistake that Plaintiff seeks to correct in its Motion for Transfer. The very language from *Palmer v. DAU* cited by Defendant states that "when venue would be proper in another district under § 1391, transfer is preferred over dismissal unless there is evidence that a case was brought

in an improper venue in bad faith or in an effort to harass a defendant." (ECF No. 14 at 7.) Though Defendant repeatedly tries to mischaracterize Plaintiff initial choice of venue as having been made in bad faith, Plaintiff maintains that a clerical error took place, and that there was no bad faith or attempt to harass in Plaintiff's initial choice. Indeed, Defendant's own argument seems to be made in bad faith, as Defendant's claim for relief requests that, in the alternative, the Court transfer the case to the Orlando Division. Defendant thus clearly wants the case to be transferred to the Orlando Division, but asks the Court to dismiss the case in order to make it more difficult and more costly for Plaintiff to pursue the case; this is the very epitome of bad faith. A transfer is thus the proper remedy to correct the improper venue in which the instant case now resides. Again, Defendant would more appropriately raise this ground for dismissal in response to Plaintiff's Motion for Transfer. Defendant has detailed its arguments supporting transfer in that motion, and Defendant should have more thoroughly addressed Plaintiff's arguments by responding directly to Plaintiff's Motion to Transfer.

## II. PLAINTIFF DID NOT WILLFULLY VIOLATE MDFL RULE 1.04 OR THE COURT'S ORDER

### A. The Previous Case Was Not Similar to the Instant Case, Thus Rendering No Obligation on the Part of Plaintiff to Report Any Related Cases

Defendant argues that "the actions of Prenda Law, the Plaintiff, and other agents of the Plaintiff above, were malicious and show great evidence of bad faith. Prenda Law, Inc., either purposefully withheld this information from both the filing attorney and the current counsel, or this was the direct error of the current counsel in spite of specific court orders and notification from another attorney." (ECF No. 14 at 13.) According to Defendant, the previous case indicated is *Sunlust v. John Does 1-76,* 1:12-cv-20921-JAL (S.D. Fl.). (ECF No. 14 at 12.) Even a cursory comparison of the "previous" case to the instant case would indicate that the cases are in no way

similar or related. For instance, the previous case was against 76 unnamed Doe defendants, while this case is against *one* named defendant. Defendant cites no case law supporting his proposition that the previous case was similar to the instant case. Indeed, Defendant cites only one case, using it to support his proposition that dismissal could be appropriate if Plaintiff in fact failed to disclose a prior, similar case. As this is Defendant's Motion to Dismiss, the burden to demonstrate that the cases are related rests squarely on the Defendant. The facts, viewed in any light—but especially in the light most favorable to Plaintiff, as required by the legal standard—certainly do not indicate any "bad faith:" or "maliciousness" on the part of Plaintiff in declining to disclose the previous case by virtue of believing that it was simply not related.

### B. Plaintiff Brings the Instant Case in Order to be Compensated For Unauthorized Use of Its Work

Defendant argues that Plaintiff has "targeted clients from three separate Plaintiffs at one time as revenge for bar complaint filed Defendant's counsel, and continued this action in anger after their bar complaint against Defendants [sic] counsel was unsuccessful." (ECF No. 14 at 13.) First, this is nothing but wild conjecture with no basis in reality.  Second, Defendant's counsel clearly harbors too high a degree of self-importance; the time, money, and effort that Plaintiff has expended on the instant case would be an extremely costly and indirect method to exact "revenge." Plaintiff does not wish to dwell on this particular baseless, paranoid accusation, as there are many more yet to cover, but Plaintiff would merely assert that its motivation in filing this suit is, as detailed in its Complaint, to be recompensed for unauthorized use of its work and to curb future instances of such behavior. (ECF No. 1 at 1.)  If revenge was the sole factor, perhaps it could have been achieved outside of this lawsuit asserting a legal claim based on Defendant's actual infringement.

### C. Plaintiff's Counsel Was Not "Victimized" Or "Dragged" Into Pursuing this Case

Defendant asserts that "By directing their actions through local counsel they are practicing law in Florida by proxy, victimizing Florida attorneys by dragging them into their web, and again attempting to circumvent the fact that they are not licensed in this state." (ECF No. 14 at 14.) Defendant cites nothing in support of this proposition but his firm belief. Plaintiff would encourage Defendant's counsel to refrain from levying unsupported, libelous accusations in the future, but as for Defendant's present contention, Plaintiff's counsel strongly denies that his choosing to accept the instant case was the result of being "victimized" or "dragged" into this case.

### D. Plaintiff's Counsel Has Abided by Ethical Guidelines

Defendant argues that Prenda Law "published the Plaintiff's complaint on their website in order to publicly embarrass the Defendant by linking him with pornography." (ECF No. 14 at 14.) Defendant would note, however, that the lawsuit is a part of the public record. In fact, the lawsuit is available on several other websites, including RFC Express and Justia. *See* RFC Express, http://www.rfcexpress.com/lawsuits/copyright-lawsuits/florida-middle-district-court/101158/sunlust-pictures-llc-v-tuan-nguyen/summary/ (last visited September 26, 2012); Justia, http://dockets.justia.com/docket/florida/flmdce/8:2012cv01685/274150/ (last visited September 26, 2012). In addition, Prenda Law's practice of posting cases in which it is involved on its website is a common one, followed by most large firms. *See* Morrison Forester, http://www.mofo.com/Litigation--Trials-Services/ (last visited September 26, 2012).

### III. PLAINTIFF IS INTERESTED BOTH IN WHETHER DEFENDANT COMMITTED COPYRIGHT INFRINGEMENT AND IN DEFENDANT'S LIABILITY

Defendant assumes that Plaintiff is focused more on attacking Defendant's attorney than pursing its infringement claims. (ECF No. 14 at 11.) This is incorrect. First, if Plaintiff did not care about the blatant infringement of its copyrighted works, it would not spend thousands upon thousands of dollars filing similar lawsuits against people like Defendant across the country. Second, Plaintiff would note that most parties who file lawsuits tend to place import on whether the opposing party is liable. The very purpose of filing a lawsuit is generally to obtain recompense from one that is *liable* for harms sustained. Defendant seems to imply that Plaintiff should be interested in whether Defendant committed copyright infringement as some sort of isolated, philosophical inquiry. Though Defendant appears to have an abundance of time with which to tax the legal system with false accusations, Plaintiff limits its use of the legal system to instances where liability may be found.

### IV. PLAINTIFF'S NEGLIGENCE CLAIM STATES A CAUSE OF ACTION UNDER 12(b)(6)

#### A. Defendant's Negligence Claim Is Not Preempted by the Copyright Act

Defendant first argues that, under the so-called "extra element test", Defendant's negligence claim is preempted by the Copyright Act. (ECF No. 14 at 12.) The negligence claim against Defendant, however, is distinct from an infringement claim. Through it, Plaintiff does not assert that Defendant infringed on its copyright. To the contrary, Plaintiff's claims that Defendant is liable for the damage he caused by virtue of his negligent operation of a home network. The harm caused by Defendant's negligence is a *sui generis* harm distinct from infringement.

The question of whether the Copyright Act preempts negligence claims such as the one made by Plaintiff is unsettled. In fact, several of the cases cited by Defendant instruct that negligence claims are preempted only when they merely supplement direct infringement claims against a particular party. *See Gary Friedrich Enter. v. Marvel Enterprises*, 713 F. Supp. 2d 215, 227 (S.D.N.Y. 2010) (rejecting negligence claim based on a duty not to infringe upon the intellectual property rights of the plaintiffs); *Bridgeport Music, Inc. v. 11C MUSIC*, 154 F. Supp. 2d 1330, 1334 (M.D. Tenn. 2001) (preempting allegations that defendants were "'grossly negligent' in determining whether the Infringing Compositions and/or Sound Recordings and/or Records in issue infringed upon any other, pre-existing musical composition and/or sound recording."). Despite its confusion on the matter, Defendant did not commit "negligent infringement" against Plaintiff's copyright; Defendant's negligence led to the infringement by someone else. Plaintiff pled a distinct claim of negligence.

### B. Plaintiff Has Alleged Sufficient Factual Basis to Support Its Negligence Claim

Defendant cites *Liberty Media Holdings v. Swarm* No. 11-00262-DAE-RLP (D. Haw. January 30, 2012) in arguing that, as in that case, Plaintiff in the instant case has not sufficiently alleged that Defendant owed Plaintiff a duty. (ECF No. 14 at 14.) Plaintiff would argue, however, that a general duty to secure ones Internet connection ought to exist. The storied tradition of the common law is rife with examples of judges who were forced to decide whether to impose burdens that, though seemingly significant at the time, were required by justice. In fact, the possibility of negligence liability itself is one such burden; though common law jurisdictions now take negligence for granted, there obviously existed a time when one owed no duties whatsoever to others to avoid harms stemming from one's own negligent acts. Plaintiff asserts that this very Court sits at an important crossroads in deciding whether such a burden is

appropriate. Unsecured networks allow unauthorized users to utilize such networks for malevolent ends, and to do so with almost guaranteed anonymity. It is well-known that, in today's world, nearly all of our individual and collective information is available via the internet; much of this information—e.g. passwords, social security numbers—is intended to be private, or to be restricted in terms of who may access it. Other types of information, such as child pornography, are intended by law to be accessed by no one. Any restriction on access, however, will be only as strong as the availability of enforcement mechanisms. Every person who is able to access the internet should have to do so in a way that will hold them accountable for their actions; any access to the internet that is completely unsecured is an opening through which individuals wishing to engage in harmful, unlawful conduct can do so anonymously. Anonymous tortfeasors and criminals are extremely likely to escape all liability for their actions, and knowledge of the possibility of anonymity encourages still others to engage in similar conduct, using similar means. Burdens must always be weighed against benefits, and as one begins to consider the wide array of harms that can occur as the result of unsecured internet connections, the burden begins to appear much less significant than some would believe.

V. **DEFENDANT'S MOTION TO STRIKE PURSUANT TO LOCAL RULE 1.05(d) AND FRCP RULE 11(a) IS WITHOUT MERIT**

Defendant argues that all of Plaintiff's papers and pleadings should be struck, pursuant to Local Rule 1.05(d) and FRCP Rule 11(a), because "based upon information and belief *but without opening or even inspecting the PDF documents filed in this case*, all or most of the documents filed within this case by the Plaintiff were both drafted and placed into the final form by agents of Prenda Law without any attribution." (ECF No. 14 at 19) (emphasis added). Defendant asserts that such a course of action would constitute a violation of rule 1.05(d), which

states "all pleadings…and other papers tendered by counsel for filing shall be signed personally by counsel, as required by Rule 11, Fed.R.Civ.P." (*Id.*)

Defendant's counsel's assertion, much like the other assertions made in his Omnibus Motion, indicate an alarming lack of familiarity with the practice of law. Even if someone other than Plaintiff's counsel had prepared the document, such a course of action is common to the practice of law. For example, judges have law clerks, and law firms have interns and junior associates who prepare documents for another to ultimately file. Defendant cites no case law supporting his proposition that the submitting attorney must have prepared the entire document. Even if Defendant had cited such case law, he has offered no evidence, other than "strictly a hunch", that someone other than Plaintiff's counsel prepared the documents. (ECF No. 14 at 19.) In fact, Defendant freely admits that he makes these assertions "without opening or even inspecting the PDF documents filed in this case." (ECF No. 14 at 19.) As with most of his Omnibus Motion, Defendant seems comically unaware here of the burden of proof he must satisfy. Defendant's "hunches" are simply not enough to justify a motion to strike.

### VI. DEFENDANT'S MOTION TO STRIKE PURSUANT TO LOCAL RULE 1.06(b) IS WITHOUT MERIT

Defendant argues that Plaintiff's Complaint should be struck pursuant to Local Rule 1.06(b) because "Plaintiff seeks injunctive relief, yet fails to state such in the title of their complaint in disagreement with rule 1.06(b)." (ECF No. 14 at 20.) Though Plaintiff did not state such in the title of its Complaint, Plaintiff's error (if any) was rather minor, and certainly does not rise to the level of striking the Complaint. In addition, Plaintiff is prepared to amend its complaint to state its request for injunctive relief in the title if the Court finds it necessary for Plaintiff to do so. Defendant knows full well that not all minor infractions are the bases for case dismissal.

Defendant also argues that the injunctive relief sought by Plaintiff is "logically well beyond the scope of the ability of Defendant and should be struck as a matter of common sense." (ECF No. 14 at 20.) Plaintiff would note that the scope of the injunctive relief sought by Plaintiff is for Defendant to refrain from engaging in similar actions (i.e. downloading Plaintiff's copyrighted works) in the future. Though Defendant's counsel may find this to be a daunting requirement, Plaintiff deems it perfectly reasonable. At the very least, such request for injunctive relief is not so unreasonable as to merit striking, and Defendant has cited no case law asserting otherwise.

## CONCLUSION

Defendant's Motion to Dismiss is an affront to the dignity of the legal profession, one that levies numerous baseless, false accusations against Plaintiff and Plaintiff's counsel while casting aspersions upon the judges of this District. The fact that Defendant's counsel would affix his signature upon such a motion is indicative of a complete lack of understanding of the burden Defendant must satisfy in so moving. For the reasons described above, Defendant has not met that burden, and his Omnibus Motion to Dismiss must thus fail.

Date: September 26, 2012

By:   /s/ Matthew T. Wasinger
      Matthew T. Wasinger (Bar # 57873)
      WASINGER LAW OFFICE, PLLC
      605 East Robinson Street, Suite 730
      Orlando, FL 32801
      Phone: 415-325-5900
      Email: wasinger.law@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. All counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

/s/ Matthew T. Wasinger
Matthew T. Wasinger