## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

## ORLANDO DIVISION

| | | |
|---|---|---|
| FIRST TIME VIDEOS, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| | ) | 6:12-CV-01493-CEH-KRS |
| v. | ) | |
| | ) | June 3, 2013 |
| PAUL OPPOLD, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT PAUL OPPOLD'S OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE

<u>Table of Contents</u>

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Table of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

I.  Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.  Facts Omit Clear Prenda Law Involvement . . . . . . . . . . . . . . . . . . . . . . . 6

II.  Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A. The Defendant does not object to the background as found in the Magistrate's

Report and Recommendation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.  Objection to later factual finding of no evidence of fraud on the court. . . 10

III.  Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

      A.  Defendant is the Prevailing Party under *Buckhannon* . . . . . . . . . . . . . . . 12

      B.  Additional Showings of Evidence Should Not Be Required for Prevailing

Party Status under Fed. R. Civ. P. 41(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . 16

      C.  Defendant is entitled to Award of Attorney's Fees. . . . . . . . . . . . . . . . . . . 16

IV.  Additional Facts Regarding Appropriateness of Attorney's Fees . . . . . . . . . . . . .20

      A.  First Time Videos is a Serial Filer Dismissing Cases Upon Being Met With

Opposing Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

      B.  6881 forensics encourages Piracy of their Clients Content to gain profit

through "Ingenuity 13" client, and others. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.  Additional Legal Argument In Objection To Recommendation To Deny Fees. . . 25

      A.  Dismissal Triggering 41(a)(1)(B) is akin to a Default Judgment Under

Copyright Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      B. An award of fees advances the purposes of the copyright act . . . . . . . . . . 27

C.  Based upon Counsel's Deductions of Prenda Law History and News Coverage,

Jonathan Torres is Unlikely to have Communicated With His Client. . . . . . .30

VI.  Summary of Objections to Recommendation . . . . . . . . . . . . . . . . . . . . . . . . . . 32

(*Additional Fees and Costs Requested*)

<u>Statutes and Rules - Page Number(s)</u>

17 U.S.C § 501 - 28
17 U.S.C. § 505 - 16, 20, 29, 33
28 U.S.C. § 636(b)(1) - 6
Fed. R. Civ. P. 41(a)(1)(A)(i) - 14, 16
Fed. R. Civ. P. 41(a)(1)(B) - 11, 12, 13 ,14, 15, 16 ,17, 20, 25, 31, 32, 33
Nevada Revised Statutes §§ 201.21, 201.22, 201.33 - 28

Cases - Page Number(s)

*AF Holdings v. Lessere*, 1:12-cv-22156 (S.D. Fl.) - 27

*AF Holdings v. Patel*, 2:12-cv-00262 (N.D. Ga.) - 27

*Anthony v. Marion County General Hospital*, 617 F. 2d 1164 - 16

*American Cyanamid Co. v. McGhee*, 317 F. 2d 295 (5th. Cir 1963) - 15,18

*Andrews v. CSX Transp, Inc.*, 737 F. Supp 1342, 1345 (M.D. Fl. 2010) - 27

*Atlantic Recording Corp. v. Anderson,* 2008 WL 185806 (D. Or. 2008) - 29

*Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) - 27

*Buckhannon Bd. & Care Home, Inc., v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001) - 12, 14, 15, 17, 32, 33, 34

*Cadkin v. Loose*, 569 F. 3d. 1142 (9th Cir. 2009) - 15, 16

*Camby v. Davis,* 718 F.2d 198, 200 (4th Cir.1983) - 6

*Capitol Records, Inc. v. Foster*, 2007 WL 1028532 (W.D. Okla) - 28

*Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977) - 15, 18

*Fernandez v. Estate of Gatti,* No. 11-62269-CIV, 2011 WL 2077817 (S.D. Fla. May 26th, 2011) - 12, 13

*First Time Videos, LLC v. John Does 1-76*, Case No. 1:12-CV-209210-JAL (*Miami Case*) - 7, 11, 13, 17, 18, 19, 21, 22, 23, 27, 32, 33

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) - 28, 29

*In Re VPR Internationale*, 11-2257 (7th Cir.) - 25

*Ingenuity 13 v. John Doe,*  2:12-cv-08333-ODW-JC (C.D. Cal) - 7, 22, 24

*Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 n. 6 (1982) - 19

*Manning v. S.C. Dep't of Highway & Public Transp.*, 914 F. 2d 44 (4th Cir 1999) - 13

*Mathews v. Crosby,* 480 F. 3d 1265, 1276 (11th Cir. 2007) - 17

*Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F. 2d 865 (5th Cir. 1979) - 28

*Perea v. Syfert*, TFB File No. 2012-00,601(4D) - 8, 30

*Pilot Freight Carriers, Inc. v. Int'l Bhd. of Teamsters*, 506 F.2d 914(5th Cir.1975) - 15

*Presse v. Morel*, 1:10-CV-02730-AJN-MHD (S.D. NY May 21, 2013) - 22

*Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) - 29

*Syfert v. Steele*, TFB File No. 2012-4035(11B) - 8

*United States v. Fogarty*, 3:13-mj-06025 (S.D. Il) - 31

*Williams v. Ezell*, 531 F.2d 1261, 1263-64 (5th Cir. 1976) - 15


Other

*Bloomberg Business Week*, Features, "Prenda Law, the Porn Copyright Trolls" (last accessed on May 30th, 2013 at http://www.businessweek.com/articles/2013-05-30/prenda-law-the-porn-copyright-trolls) - 30

SAMURAI CHESS (1997) (Gelb & Keene: Walker and Company, New York) - 26

*The North American Review*, Vol 48 (ed. Jared Sparks, et. al. Jan 1839) - 9, 25

THE PRODUCERS (1968 screenplay (Brooks, Mel)) - 21, 22, fn. 6.

Table of Exhibits
Exhibit "A":  Email from Attorney George Banas
Exhibit "B":  Email from Attorney Jonathan Torres
Exhibit "C":  Order from *Ingenuity 13 v. John Doe,*  2:12-cv-08333-ODW-JC (C.D. Cal)
Exhibit "D":  Full Demand Letter Relating to Miami Case from Perea
Exhibit "E":  Godaddy Records of Internet Domain Names of John Steele
Exhibit "F":  Steele response to Syfert Bar Complaint Stating He is Only Client
Exhibit "G":  Kentucky Status Report Listing John Steele as Manager of Prenda Law
Exhibit "H": John Steele Affidavit of No UPL
Exhibit "I": Table of Approximately 38 First Time Video Cases
Exhibit "J":  Declaration of Peter Hansmeier filed in Miami Case
Exhibit "K": Declaration of Delvan Neville

    Exhibit "K-1": Summary of tracker messages for Mullvad VPN in 6881 forensics Bittorrent Swarms

    Exhibit "K-2":  Summary of messages received from Mullvad VPN peers

    Exhibit "K-3":  Summary showing anomalous peer IDs of Mullvad VPN peers

    Exhibit "K-4":  Logs of comments from FightCopyrightTrolls.com and DieTrollDie.com and indicating Prenda Law bias and/or knowledge

    Exhibit "K-5":  Website Pirate Bay showing torrent Information for AF Holdings work Popular Demand

    Exhibit "K-6":  Website Pirate Bay showing torrent Information for AF Holdings work Sexual Obsession

    Exhibit "K-7":  Website Pirate Bay showing torrent Information for Ingenuity 13 work Five Fan Favorites: Rosemary Radeva

    Exhibit "K-8": Website Pirate Bay showing torrent Information for Ingenuity 13 work Five Fan Favorites: Amy Brooke

    Exhibit "K-9": Website Pirate Bay showing torrent Information for Ingenuity 13 work Five Fan Favorites: Madison Fox

    Exhibit "K-10":  Website Pirate Bay showing torrent Information for Ingenuity 13 work Five Fan Favorites: Tory Lane

    Exhibit "K-11":  Website Pirate Bay showing torrent Information of "Fan Favorite: Spencer Scott: Playmate on a Motorcycle"

    Exhibit "K-12":  Printouts Relating to Pornography Website naughty-hotties.com Under Construction and identification of Sharkmp4, Ingenuity 13 Materials

    Exhibit "K-13":  Whois records for naughty-hotties.com

    Exhibit "K-14":  Log of comment coming from naughty-hotties.com to DieTrollDie

    Exhibit "K-15":  Hit dates from Ingenuity 13 showing times of alleged infringement close, before, or after sharkmp4 upload time

    Exhibit "K-16": Go-daddy record showing 75.72.88.156 successfully logging into go-daddy.

    Exhibit "K-17": php calls from naughty-hotties.com

Defendant, Paul Oppold, files this objection to report and recommendation of the magistrate and states, in support thereof, upon review *de novo* 28 U.S.C. § 636(b)(1); *Camby v. Davis,* 718 F.2d 198, 200 (4th Cir.1983), that:

## I.  FACTS OMIT CLEAR PRENDA LAW INVOLVEMENT

Defendant makes no objection to the procedural history of this case as reported, except as to the statement that on July 30th, 2012, First Time Videos, "through its attorney, George A. Banas, Esq., filed a complaint against Defendant."  Such a finding is an oversimplification of fact, smears the name of Mr. Banas, and neglects the involvement and activities of the now infamous Prenda Law in this case, as managers of the litigation.

*A.  Facts Omit Prenda Law Involvement*

Plaintiff First Time Videos and filing attorney George A. Banas, Esq. filed this case at the direction an outfit named Prenda Law that has continued managing this case despite the attempted withdrawal of two attorneys and the attempted withdraw of their current counsel.  *See* Doc. 7, Doc,  21, Doc. 27.[1]  *See also Exhibit* "A" (e-mail of George Banas- admitting Prenda Law directed him to file the case.)  Further, despite claims to the contrary at various documents in the record, Plaintiff has admitted an objective opinion that this matter is motivated by a dispute, specifically a "feud" between Prenda Law and Defendant's counsel.  *See Exhibit* "B" (stating "The only thing I can say is that I'm glad I

---

[1] Plaintiff claims in their response to the motion for attorneys fees that these withdrawals occurred because of unethical activities of the Defendant's lawyer, and Defendant's lawyer vehemently denies these accusations.   Any withdrawal occurred because of the activities of Prenda Law.

realized about the issues prior to any further involvement in what I consider, objectively speaking, a feud between Prenda Law and yourself'").

Prenda Law is comprised of Paul Hansmeier, John Steele, and Paul Duffy, as well as other attorneys, most notably Brett Gibbs. *See Ingenuity 13 v. John Doe,* 2:12-cv-08333-ODW-JC (C.D. Cal), Doc. 130 (attached as *Exhibit* "C" briefly explaining Prenda Law in relation to the Star Trek franchise and RICO statutes).   The first connection with Prenda law in this case is the complaint which contains the e-mail address of blgibbs@wefightpiracy.com, former Prenda law counsel with Prenda Law domain name "wefightpiracy.com".  Doc. 1.  The second connection to Prenda Law is that Peter Hansmeier, the brother of Paul Hansmeier, appears as an agent of Plaintiff on the face of the certificate of registration of the work.  Doc. 1-1.   *See Ingenuity 13 v. John Doe*, 2:12-CV-08333, Doc. 71 (deposition transcript of Paul Hansmeier taken in case *AF Holdings v. Navasca,* 3:12-CV-02396-EMC stating Peter Hansmeier is a technician with 6881 forensics (pg. 166) and evading any questions regarding 6881 forensics.)  The original dun, rooted and referencing *First Time Videos, LLC v. John Does 1-76*, Case No. 1:12-CV-209210-JAL (hereinafter the "Miami Case"), listed Florida attorney Joseph Perea, with an e-mail address of joperea@perealawfirm.com.  *See Exhibit* "D" (demand letter sent by Joseph Perea of Joseph Perea, P.A.)  While it may appear as if Mr. Perea was at that time, acting as an independent counsel and solo practitioner, even his solo firm domain name was controlled by John Steele.  S*ee Exhibit* "E" pg.86 (go-daddy domain records of accounts belonging to John Steele, showing that he registered and owned the domain name perealawfirm.com).

A letter dated January 26th, 2012, written to the Florida Bar (denying Steele's violation of UPL) states that "[Steele's] presence at Prenda would be solely in the capacity of a client."  *Exhibit* "F".  On January 29th, a court status report was filed in the Western District of Kentucky where management information on Prenda Law letterhead was given for Paul Duffy, John Steele, and Paul Hansmeier as the managers of an attorney named Raphael Whitford.  *See Exhibit* "G".  Both of these exhibits cannot be true when viewed together.

Although they may attempt to avoid such admissions of involvement, Prenda law used the many Florida counsels appearing in this case as a proxy lawyer for their own litigation, personally motivated.  Steele will continue to obfuscate his involvement in this matter in an effort to dodge his no UPL affidavit.  *See Exhibit* "H".  Prenda Law's inclusion of Doc. 34-1 and other personal attacks make clear that the acts of the Plaintiff are still motivated by revenge. [2]

Through omission or error, the Defendant failed to include the bar complaint file numbers in the original motion to dismiss.  The two most notable are *Syfert v. Steele*, TFB File No. 2012-4035(11B) *see Exhibit* "H" (resulting in affidavit of no UPL), and *Perea v. Syfert*, TFB File No. 2012-00,601(4D) (resulting in a finding of no probable cause and no suggestions).

Defendant's motion to dismiss discussed metadata information from PDF documents that *were* retrieved. Doc. 14, pg. 19;  *contra* Doc. 18, pg  1. (misdirecting the court by misquoting Doc. 14 regarding metadata, *italicizing every fabrication made in*

---

[2] A public apology was made to Mr. Weaver for the e-mail.  Mr. Weaver and I have had no ill contact with each other since 2010 despite having opposing clients.

*bad faith).*   It is with the utmost irony that metadata information from the spreadsheets of potential Defendants in Prenda Law cases nationwide shows involvement of a computer user operating under the alias of "Sir Frances Drake".  Sir Frances Drake is best known due to our Anglo-Saxon historical perspective as an explorer.  However, while flying under the banner of England, Drake committed atrocities against the Spanish in the Spanish Americas.  *The North American Review*, Vol 48, p. 133 (ed. Jared Sparks, et. al. Jan 1839).  He was considered an explorer by the English, and considered a pirate by the Spanish.  *Id.*  However one commentator noted regarding Sir Francis Drake:

> "Piracy is too tender a name for those brutalities.  Drake referred his own acts to the *inducement* of personal revenge, though the *object* was mere avarice.  Whether Drake had any cause for personal resentment, is easy to judge by the  facts."  *Id.* p. 134 (emphasis not added)

> *compare* Doc. 18, pg. 5 of the instant case (stating "If revenge was the sole factor, perhaps it could have been achieved outside of this lawsuit asserting a legal claim based on Defendant's actual infringement.") [3]

Although both Steele and Hansmeier have hired local counsels to handle Prenda law cases, they have always generally directed the actions of those counsels, drafted all litigation documents, and made all decisions regarding settlement of cases and litigation strategy.  In essence,  Steele, Hansmeier, and Duffy, when faced with impediments to their intent to practice within Florida, have found a way around their inadmissibility. [4]  In

---

[3] Such statement also resulted in Defendant's counsel cautioning his paralegal not to open unexpected packages.
[4] Exhibit "C" incorporates Star Trek references and describes these local counsels as "redshirts."  Such reference alludes to the original Star Trek series, wearing a red shirt on a dangerous away mission meant that the character was likely to end up dead.  To embrace the role play, Banas, Wasinger, and Torres, were all unsuspecting redshirts, warned about their upcoming away mission by opposing counsel.

bringing this case, Duffy, Steele, and Hansmeier did so to the *inducement* of personal revenge, even though the *object* was an award of damages through the complaint.

## II.  BACKGROUND

   *A.  The Defendant does not object to the background as found in the Magistrate's Report and Recommendation.*

   *B.   Objection to Later Factual Finding of no Evidence of Fraud on the Court*

   A related factual finding is later made that: "Oppold contends that the purposes of the Copyright Act will be served by an award of attorney's fees because FTV's dismissal of the case arose from "fraud on the court," but he did not file any evidence to support that assertion."  Defendant has now included exhibits and citations within this objection and will include more as evidence of the fraudulent nature of Prenda Law, evidence of previous bar complaints, the motivation of the litigation, as well as Plaintiff's own admission that the litigation was objectively a feud between Defendant's counsel and Prenda Law.  *Exhibits* "A through H"

   Defendant further states that even before this new introduction of evidence, that there was sufficient evidence on the record indicating fraud and the willful dodging of court orders of the Plaintiff.  The motion to dismiss alleged maliciousness, bad faith, and wrongful motivation- charges which if made in bad faith by Defendant's counsel, would submit him to punishment of sanctions and should be weighted accordingly.  Doc. 14.  Despite their involvement, management, and interest in the litigation- under order of the court [Doc. 6]- Plaintiff filed a Certificate of Interested Persons and failed to list Prenda Law, 6881 Forensics, and FTV, Inc.  Doc. 10 ; *compare*  Doc. 16 (listing Prenda Law,

Peter Hansmeier, 6881 Forensics, correcting use of alias of Hooman Simyar to Robert Simyar, and disclosing FTV, Inc. (affiliate of Plaintiff), as well as listing those who would were claimed by Plaintiff to be jointly and severally liable in the *Miami Case*).  By hiding these entities, Plaintiff, through their agents, conspired to hide corporate relationships and interest in this litigation despite court order for disclosure.  *See* Doc. 6.  Such actions of failing to disclose interested parties to the court constitute a fraud on the court motivated by furthering the likelihood of Plaintiff's untroubled maintenance of this case while attempting to extract a settlement from the Defendant.

Further, Plaintiffs were under order to disclose all previous related cases.  Doc. 5. Plaintiffs were put on notice through counsel to disclose this previous case to the court prior to filing the Motion to Dismiss.  *See* Doc. 14, pg. 2.   Plaintiff also intended to hide the *Miami Case* to avoid questions as to why Paul Oppold was supposedly jointly and severally liable with 75 other Defendants in the *Miami Case*, but individually liable in the instant case.  *See* Doc. 14, pg. 14, fn. 8; Doc. 16.

The Plaintiff began the instant action purposefully hiding and dodging the previous *Miami Case*, specifically to hide from the court the Declaration Peter Hansmeier of 6881 Forensics.  *Attached at Exhibit* "J".  Also, Plaintiff did not list the related cases specifically to avoid the imposition of an adjudication on the merits under Rule 41(a)(1)(B), and to avoid restrictions on damages that result from the Miami Cases's claims of joint and several liability.   Such actions of failing to disclose previous cases to the court- hiding potential witnesses, evidence, and co-conspirators, at an early stage constitute a fraud on the court evidencing a propensity to continually hide such

information to sustain Plaintiff's litigation while demanding settlement from the Defendant.

In short, Plaintiff, through their agents, from the initial filing of the complaint, conspired to hide cases and disobey court orders, and ultimately complicate Oppold's defense and therefore committed a fraud on the court. *See generally* Doc. 14.

## III.   ANALYSIS

### A.  *Defendant is the Prevailing Party under Buckhannon*

A "prevailing party" is defined "as '[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . .'" *Buckhannon Bd. & Care Home, Inc., v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001) (quoting Black's Law Dictionary 1145 (7th ed. 1999)).   Oppold is the prevailing party pursuant to Fed. R. Civ. P 41(a)(1) based upon two voluntary dismissals of two suits for one act, thus triggering the "adjudication on the merits" provision of 41(a)(1)(B).

Defendant must respectfully object to a legal conclusion phrased in such manner that "[t]he two-dismissal rule does not apply unless the same Defendant is named in each case." Doc. 35, pg. 5, pp.1.   Cited for this proposition is the case *Fernandez v. Estate of Gatti,* No. 11-62269-CIV, 2011 WL 2077817, at *2-3 (S.D. Fla. May 26th, 2011).   The *Gatti* court specifically states that: "The Court finds that the two dismissal rule is inapplicable to the instant case because the defendants were not named in the first state court action."   In *Gatti*, the first case in the trio that formed the appeal question was filed against a named Defendant, Thiago Alves.   A second suit was filed against the Estate of Gatti and such was voluntarily dismissed.  The Estate of Gatti filed a motion to dismiss

based on their allegation that the third suit was barred under the two dismissal rule.   The court concluded that because Mr. Alves was named in the first case and the Estate of Gatti was only involved in the second and third litigation, Mr. Fernandez could continue with his third and last filed case against the Estate.   The *Gatti* case is easily distinguished from the instant case due to the fact that a third case is not involved.   Because Defendant received letters and phone calls from Plaintiff, demanding payment of money under settlement relating to the Miami Case, any holding in *Gatti* should only be instructive to the particular situation where a third case is filed, where there was no privy between parties in the first.

The recommendation rightly concludes that that under *Manning,* the dismissal operates as an adjudication on the merits.  *Manning* is incredibly instructive as to whether Oppold's case is "adjudicated on the merits."  *Manning v. S.C. Dep't of Highway & Public Transp.*, 914 F. 2d 44 (4th Cir 1999).  In *Manning*, there is only a question of whether *res judicata* would apply to bar the third suit with no "prevailing party" analysis. The Defendant finds *Manning* instructive solely for the proposition that a dismissal filed against a John Doe defendant and a second "named case" case targeting that same individual triggers *res judiciata* protection from a third suit.  The instant case is readily distinguishable in result, however, because of the operation of 41(a)(1)(B) results in an adjudication on the merits and the instant case is not a third case.  Nothing in *Manning* reaches the question of whether under the second suit, the Defendant would have been considered a "prevailing party" but only that *res judicata* applies to a third filed case. The recommendation correctly concludes that *res judicata* applies to any hypothetical

future action pursuant to the Plaintiff's dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i).

Doc. 35 at 6.

Defendant wholly agrees with the recommendation that under the circumstances of the instant case, the two dismissal rule applies.  Defendant however respectfully objects to the conclusion that a adjudication on the merits under Rule 41(a)(1)(B) is less than the "type of judicially sanctioned change in the relationship of the parties required by *Buckhannon*."  *See* Doc. 35 at 6-8.  Plaintiff's reply to the motion for fees, misapplies *Buckhannon* by following interpretive decisions of *Buckhannon* that relate to situations easily distinguishable to the instant case.   *Buckhannon* requires a "judicially sanctioned change in the relationship of the parties."  The Federal Rules of Civil Procedure, judicially promulgated, have changed the relationship between the Plaintiff and Defendant so that Oppold is no longer in danger of being hailed into court.  This result-by promulgated Supreme Court rule- is a significant and judicially sanctioned change in the relationship of the parties under *Buckhannon*.  The Defendant would be free to file claims against the Plaintiff, and the Plaintiff would be barred from bringing up the infringement in a counterclaim.  *Buckhannon Bd. & Care Home, Inc., v. W. Va. Dep't of Health and Human Res,* 532 U.S. 598, at 604 (2001) states:

> "*In addition to judgments on the merits*, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. *See Maher v. Gagne*, 448 U. S. 122 (1980)." (emphasis added)

*Buckhannon* makes clear that "judgments on the merits" may serve as a basis for award of attorney's fees.  *Buckhannon* at 604.  Defendant puts forth the proposition that "adjudication on the merits" as found within Rule 41(a)(1)(B) and "judgment on the

merits" as found *Buckhannon* are phrases which are synonymous. While Florida was still in the Fifth Circuit, the simplest line of precedent, binding on this court, set the tone of the bright line nature of Rule 41 by stating that it "means what it says." *Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977); *see also Williams v. Ezell*, 531 F.2d 1261, 1263-64 (5th Cir. 1976); *Pilot Freight Carriers, Inc. v. Int'l Bhd. of Teamsters*, 506 F.2d 914, 916 (5th Cir.1975).

The Court in this matter is further bound by the precedent and logic of *American Cyanamid Company v. McGhee*, 317 F. 2d 295 (5th. Cir 1963). *McGhee* states that 41(a)(1) is a "quick and ready tool *may only be used once, and only once, if clear consequences are to be avoided*. A second notice of dismissal not only closes the file, it also closes the case with prejudice to the bringing of another." *Id.* at 297 (emphasis added). *McGee* further states that "The reason for this arbitrary limitation, pointed out in numerous decisions, is to prevent unreasonable abuse and harassment." *Id. McGee* further illustrates that as there was no such bar of two voluntary dismissals at common law, and that therefore Rule 41 is a bright line rule issued to prevent abuse and harassment. *Id.*

In their misapplication of *Buckhannon* to the instant facts, Plaintiffs cite the case of *Cadkin v. Loose*, 569 F. 3d. 1142 (9th. Cir. 2009). Doc. 34, pg. 2, pp 1. In *Cadkin*, the appeal found that award of attorneys fees was improper in a copyright case upon the *first* voluntary dismissal of a case. *Cadkin* concluded by stating, under the terms of 17 U.S.C. § 505, that:

> "*Miles* and *Oscar,* taken together, *compel the conclusion that a defendant is a prevailing party following dismissal of a claim if the plaintiff is judicially*

*precluded from refiling the claim against the defendant in federal court.* That is not the circumstance here, so the Trust and May-Loo are not prevailing parties and the district court erred in awarding them attorney's fees."   (emphasis added)

In so concluding, the 9th Circuit has already distinguished the holding in *Cadkin* from the instant case. The precedent cited by the Plaintiff that it urged the court to adopt supports and even clearly defines in its conclusion Oppold's status as the "prevailing party" due to a second dismissal. *Anthony v. Marion County General Hospital*, 617 F.2d 1164, 1170 (5th Cir. 1980) (stating "Although there has  not been an adjudication on the merits in the sense of a weighing of facts . . . the hospital has clearly prevailed in this litigation.")

B.  *Additional Showings of Evidence Should Not Be Required for Prevailing Party Status under Fed. R. Civ. P. 41(a)(1)(B)*

Based upon the second dismissal, Paul Oppold cannot be hailed into court again for the alleged infringement or negligence.   Rule 41(a)(1)(A)(i) is only an operative rule in situations "before the opposing party serves either an answer or motion for summary judgment."   It is clear that the intended operation of Fed. R. Civ. P. 41(a)(1)(B) would be defeated if the Defendant would have to make additional showings of evidence to prove that he is the prevailing party.   Because the two dismissal rule can only be given effect before answer or summary judgment are filed, no further statements of fact or requirements of proof need be met to allow the Court to determine Oppold's status as a prevailing party. This court should adopt the reports finding that this case was adjudicated on the merits.  This court should also rule that the case was adjudicated on the merits in the favor of the Defendant.  By operation of rule, Paul Oppold prevailed in

this case on the merits. He qualifies as a prevailing party, regardless of how well formed Plaintiff's complaint or evidentiary backing may have ended up being. *See Mathews v. Crosby*, 480 F. 3d 1265, 1276 (11th Cir. 2007).

### C.  Defendant is entitled to Award of Attorney's Fees

Defendant objects to the form of the application of often cited legal standards of *Buckhannon* to the instant facts, as they ignore a judicially sanctioned change in circumstance, but concurs with the cases cited as applicable and appropriate under the circumstances.

It is factually correct that Defendant did not directly submit any exhibit evidence that Plaintiff's dismissal of the case arose from a fraud on the court until this objection. However, a review of the record as it sat before this filing will show that it has been Defendant's contention that the Plaintiff purposefully, maliciously, and with bad faith filed this complaint and maintained this action in effort to exact revenge.  Doc. 14 at 13. Further, it was alleged that Prenda Law intended to mislead the court in their use of an alias in a corporate disclosure.  Doc. 14 at 12.   Further, it was alleged that the Plaintiff willfully and purposefully failed to inform the court of the prior Miami Case, for multiple reasons.  Doc. 14 at 10-11.

Respectfully, the recommendation as proposed puts an undue burden on the Defendant to prove that he would have been a prevailing party by stating: "Oppold has not shown that the allegation that he personally acted knowingly and intentionally in downloading the video is without evidentiary support."   Doc. 35 pg. 8.   The merits of this case were decided by the highest law of the land through its promulgation of Fed. R.

Civ. P. 41(a)(1)(B), an arbitrary bright line rule to deter abuse of process and the use of the court system for harassment.   *McGhee*, 317 F. 2d at 297.   Defendant Oppold was never given the chance to prove upon judicial hearing or trial that he did not download the video, and never had the chance to discover evidence from the Plaintiff.   The only pleading filed in this matter was Plaintiff's complaint. Because the recommendation correctly concludes that the second dismissal operates as an adjudication on the merits, at a minimum, the merits of all counts within Plaintiff's complaint were adjudicated in the Defendant's favor.   By operation of judicially sanctioned rule, Defendant has lawfully been found to not have committed any act of infringement or negligence as claimed by the Plaintiff.   Any factual findings or conclusions to the contrary would be disparate to the plain language of Rule 41 which "means what it says." *Carter* at 259.

The recommendation further finds that "Oppold did not appear in the Miami case and, thus, he was not subjected to harassment or even inconvenience by the filing of that lawsuit."  It is plainly clear from the demand letter that Oppold *was* subject to harassment and inconvenience and settlement demand as a result of the *Miami Case*.  *See Exhibit* "D".  In the motion to dismiss, the Defendant stated in good faith that he is an "eggshell skull" Defendant. Doc. 14, pg. 8.   The dun referencing the *Miami Case* caused Mr. Oppold elevated levels of anxiety and confusion, adding to the severity of his condition. Further adding to his anxiety and condition, the Defendant received debt collection phone calls from agents of the Plaintiff.  *See* Doc. 14, pg. 2-3, pp. 1.  Such phone calls were so unpleasant, and drove up his anxiety level such that that he could not remember who called or what was discussed. *See* Doc. 14, pg. 2, pp. 1.  All the fear, uncertainty, and

bewilderment of a Defendant entering into unanticipated litigation were felt by Mr. Oppold as a result of the *Miami Case*, without regard to the instant case.

The recommendation states that "While Oppold appeared through counsel in the present case, as noted above he offered no evidence to support his contention that the present case has no evidentiary support." Doc. 35 at 8. To the best of knowledge of the undersigned counsel, Defendant has never made a statement on this record that Plaintiff's complaint lacked *any* evidentiary support because he never got a chance to see any. As close a statement as Defendant's counsel can find within the docket, is the fact that Defendant voluntarily offered up his computers to prove his innocence- and that despite his claimed innocence and lack of knowledge, that Plaintiff elected to proceed on a tenuous theory of negligence. Doc. 35, p. 5, pp. 3. Defendant continuously made requests for a proper case management conference, so that the parties could launch into discovery. Defendant had already given the Plaintiff's acting counsel several informal written notices of the exact information that he was going to be seeking from 6881 Forensics and the Plaintiff.

While it is true that by virtue of the two dismissal rule, Plaintiff will not be permitted to bring another lawsuit against Oppold, such a judicial rendering in this case would be premature. "*Res judicata*" is defined as a final judgment on the merits of an action which precludes the parties or their privies from relitigating claims that were or could have been raised in that action. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 n. 6 (1982). Although it is true that the doctrine of *res judicata* would prevent a third lawsuit and such relationship should be considered a judicially sanctioned change, a

decision rendered that *res judicata* does or does not apply to a third suit is premature in this case, as such a decision would be advisory in nature.  The allegations of the complaint have been adjudicated on their merits solely by virtue of Fed. R. Civ. P. 41(a)(1)(B).  The Defendant has been lawfully adjudicated not to have committed the alleged acts of the Plaintiff's complaint.

## IV.  ADDITIONAL FACTS REGARDING APPROPRIATENESS OF ATTORNEYS FEES

Defendant, upon *de novo* review, raises for the first time two facts which may weigh in the favor of an award of fees under 17 U.S.C. § 505.  First, all Plaintiff's cases are voluntarily dismissed as a matter of course before discovery is due from Plaintiff making it a serial filer of complaints who also serially dismisses without prejudice avoiding scrutiny.  Second, Prenda Law's business structure is such that it is copyright violating pirate, forensic pirate hunter, and attorney.  It also appears that Prenda Law also wants to/has formed/is forming a corporate structure where it is:  pornography producer, copyright holder, pornography pirate, forensic investigator, attorney firm, and debt collector.  Other than the omission of appearing in the pornography themselves, this would represent an entire in-house copyright trolling monopoly- not designed to promote their own works for distribution and sale, but to induce infringement of their works and reap profits seen from mass anti-piracy litigation.

*A. FIRST TIME VIDEOS IS A SERIAL FILER DISMISSING CASES UPON BEING MET WITH OPPOSING COUNSEL*

First Time Videos has filed more than thirty-eight cases nationwide alleging violation of copyright against what appears to be thousands of Defendants. *Exhibit* "I" (*some* publicly available references).  There appears to be over 1000 Defendants for the download of the work "Tiffany" alone, in an non-exhaustive review of the available dockets. *Id.*  However, the Plaintiff tends to dismiss any Defendant prior to discovery or adjudication. *Id.*  Prenda Law, Plaintiff, and Plaintiff's counsel will not be able to point to *any* First Time Videos case where discovery of Plaintiff's evidence was permitted prior to voluntary dismissal.

In an extremely conservative estimation, if just 20% of all those accused of downloading FTV Tiffany in *Exhibit* "I" settled with the Plaintiff and successfully negotiated down their settlement to $3000 instead of $3400, Plaintiff would have recovered approximately four times the maximum statutory damages permitted for one infringement.[5]   If in the previous Miami Case, 66% of Defendants settled for a demand at or near $3400, Plaintiff would have fully collected his maximum $150,000.00 damages for that particular infringement under a theory of joint and several liability.

Clearly, distribution of one particular work on bittorrent and subsequent monetization through litigation is potentially more profitable than "FTV-Tiffany" ever could have been on its own.  Much like the plot of the 1968 Mel Brooks classic "The Producers," a flop produced on a low budget and made freely available on bittorrent to

---

[5] $1091 \times .20 \times \$3000 = \$654,600 - (\$350 \times 11\, filing fees) = \$650,750$   While Plaintiff may claim that it is entitled to $150,000 per infringement, per defendant, the majority of  the cases began with the Plaintiff pleading joint and several liability among many defendants.  Subsequent "one-on-one" cases  as they are called by Prenda Law, would never bother to explain how Defendant was jointly and severally liable in the first case, but not benefited by those who settled in the previous case.

future litigation targets could be more profitable than a fairly successful independent movie production.[6]  Given that many of the multiple doe lawsuits claim joint and several liability (like the previous Miami case), it is questionable whether Plaintiff is entitled to such enormous sums.  *See e.g.  Presse v. Morel*, 1:10-CV-02730-AJN-MHD, Doc. 217, pg. 15 (S.D. NY May 21, 2013).  While a typical owner of a copyright work may want piracy of their works to end, Prenda Law and 6881 forensics are not so motivated as such actions would decrease their bottom line.

Plaintiff generally and most often concludes litigation with a voluntary dismissal.  Some voluntary dismissals reflect settlements, and others do not.  Due to the secretive nature of settlement agreements, it is impossible to calculate how many John Does settled and how many simply were dismissed.  However, it is obvious from a review of all cases that it is standard practice for the Plaintiff to maintain a case briefly while a case is opposed by an obstinate Defendant- and then to "cut and run" under Rule 41(a)(1) with a voluntary dismissal before Plaintiff's discovery is due.   Plaintiff has always followed this standard practice while Prenda Law has been managing their litigation. As such, an award of fees would further the intent and purpose of the copyright act to deter future cases being filed upon reasons of extortion rather than a judicial weighing of facts.

*B. 6881 forensics encourages Piracy of Their Own Content to gain profit through*

*"Ingenuity 13" Client, and Others*

---

[6] Character Max Bialystock: "You were saying that under the right circumstances, a producer could make more money with a flop he could with a hit."  Leo Bloom (smiling): "Yes, it's quite possible." THE PRODUCERS (1968 screenplay (Brooks, Mel))

For all practical purposes, there is no difference between 6881 Forensics and Prenda Law.  Both are managed by Minnesota Attorney Paul Hansmeier and Illinois Attorney John Steele.   *See attached Exhibit* "E" pg. 86 (go-daddy records that show that the domain name 6881forensics.com is managed and paid for by John Steele); *see generally Exhibit* "C".  According to Peter Hansmeier, a "seeder" is "[t]he person who possesses a complete digital reproduction of a given file, and intentionally elects to share the file with other Internet users. . . "  *See Exhibit* "J", pp. 9  (declaration of Peter Hansmeier filed in the previous *Miami Case* regarding the work "FTV - Tiffany" again evidencing that the *Miami Case* was related).

If discovery were granted the Defendant hoped to prove 6881 forensics software reported as a version of the open source Vuze client.  *See Exhibit* "K" (Declaration of Delvan Neville (**Warning: Exhibits to Declaration Contain Redacted but Graphic Sexually Explicit Images**)). (For a background on bittorrent in general, but extreme absence of technical information, see *Exhibit* "J" Declaration of Peter Hansmeier).

It would also have been alleged that the 6881 forensics software reports as a seed or "seeder" as described by Peter Hansmeier and therefore 6881 forensics is actively sharing the file to maintain a position of inducing infringement, important to maximizing the profit of their operation.  *See Exhibit* "K".  Further, Defendant intended to show that the 6881 forensics software reported as a seed and sent out Bittorrent protocol messages containing values that are, in plain text format, "BT_ALLOWED_FAST."  Such BT_ALLOWED_FAST messages are characteristic of a client that wishes to give out a file to as many people as possible. *See* "Fast Extension: Draft"  (Author Bram Cohen,

creator of Bittorrent) http://www.bittorrent.org/beps/bep_0006.html#allowed-fast last accessed 5/24/2013.) (stating *Allowed Fast* is an advisory message which means "if you ask for this piece, I'll give it to you even if you're choked.")  In plain terms, such messages strongly imply that 6881 forensics wanted the file distributed.  Prenda Law further induced copyright piracy on behalf of their clients though the use of Pirate Bay user with the alias "sharkmp4" in an effort to extract settlements from Defendants.  With Ingenuity 13, they created something both evil and ingenious.

Plaintiff, through 6881 forensics, and Prenda Law and John Steele and Paul Hansmeier (*See Exhibit* K-16 showing nearly simultaneous involvement of IP addresses from Florida and Minnesota relating to prendalaw.com) were acting as both copyright pirate (freely distributing the works of the Plaintiff, originating the distribution of the works on bittorrent) and as pirate catcher recording the IP addresses for monetization of infringement.  *See Exhibit* "K" (Declaration of Delvan Neville).  The Defendant believes that such activities on behalf of the Plaintiff, in broadcasting via bittorrent the same material that they are supposed to protecting would have lent it self quite sufficiently to adequate defenses of implied license, estoppel, waiver, unclean hands, and at least five other potential counterclaims or affirmative defenses.[7]  This duality is again reminiscent of the story of Sir Frances Drake.  *supra*, pg 9.

The ethics of these actions are even further blurred into oblivion by the fact that Ingenuity 13 and AF Holdings are entities controlled by Prenda Law.  *See* Doc. 36, pg. 7

---

[7] The Defendant also, in good faith, asserts that the evidence gathered by 6881 forensics may never give an accurate estimate of how much of a file a peer has downloaded, or whether such file was ever "viewable" by a potential infringer.

(relating Torres's intent to withdraw on Ingenuity 13 and AF Holdings and First Time Videos). The facts have been found that they are both attorney and client in a California court- controlling AF Holdings and Ingenuity 13.  The copyrights of VPR Inc., represent what was Prenda Law's first attempt at such a scheme before the creation of Ingenuity 13. *See Exhibit* "K", fn.12, pg. 21.  The entity known as VPR Inc. d/b/a[8] VPR Internationale filed multiple actions within the various courts, including an appeal to further attempts to discover the identity of John Does- maintaining their charade that they were interested in protecting the copyrights.  *In Re VPR Internationale*, 11-2257 (7th Cir.)  The Go-daddy records at *Exhibit* "E" page 3 show that the same individual whose signature was forged in California and Georgia on an assignment of AF Holdings, was also supposed to be involved in the registration of domain names relating directly to VPR Inc works.  (i.e. IraqCarePackages.com, MyGirlfriendLostABet.com correspond to works PA0001732176 "Iraq Care Package" and PA0001732178 or PA0001732159).   Registration of domain names clearly show that John Steele was impersonating Alan Cooper, using his name in an effort to deceive anyone who might investigate the company VPR, the project he called "Viper."[9]  Pirate bay user "sharkmp4" was also responsible for distribution of VPR works.

## V.  ADDITIONAL LEGAL ARGUMENT IN OBJECTION TO RECOMMENDATION TO DENY FEES

---

[8] The use of d/b/a is a slight misnomer as they were likely not truly "doing business," just pirating their own materials and then suing infringers.

[9] Metadata analysis conducted by Defendant's counsel of over 1000 pdf files filed by Prenda Law confirms the use of the term "Viper" as being used in filenames in VPR internationale case filings.

Because review of the recommendation is *de novo*, and such proposed findings evidenced in the recommendation found that an award of fees would not further the copyright act, Defendant offers the following additional arguments to support that such an award would be equitable and advance the purposes of the copyright act.

### A. Dismissal Triggering 41(a)(1)(B) is akin to a Default

### Judgment Under Copyright Act

In the game of chess, a fool's mate is the most rapid possible game of chess resulting in a checkmate.  SAMURAI CHESS, PG 72. (1997) (Gelb & Keene: Walker and Company, New York).   It is "a trick possible to perform only on a complete beginner. Nobody would ever make the same mistake twice.  The game is over in just two moves . . ." *Id.*   When the instant litigation began, Defendant's counsel advised Plaintiff's counsel that under the two dismissal rule, the Plaintiff would be facing a possible award of attorneys fees.  Defendant's counsel gave Plaintiff several chances to stipulate to a dismissal- such offers occurring prior to discovery of facts which lead Defendant to a renewed position of bold recalcitrance.  Defendant's confident demand for payment of attorney's fees in the instant case was met with an attempt to escape adverse adjudication by voluntary dismissal by Plaintiff without prejudice.  Doc. 29.   Although akin to a chess play, counsel did not induce nor cause dismissal through gamesmanship or unethical misconduct, but solely on the merits of the case.  Defendant's counsel repeatedly warned of the existence of the previous Miami case, and its effect- the equivalent of telling an opponent to be very careful when moving a g-file pawn two spaces in an opening chess move.

A default judgment has the effect of establishing as fact the well plead allegations of fact, and the entry of a clerks default bars the defendant from contesting them. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).  Such merits and evidentiary matters are adjudicated, and all well plead allegations are accepted as true.  *Id.*  Likewise, where there is a voluntary dismissal of a claim that has the effect of being with prejudice, it results in an adjudication on the merits, and Defendant is considered a prevailing party. *Andrews v. CSX Transp, Inc.*, 737 F. Supp 1342, 1345 (M.D. Fl. 2010).   At the moment the dismissal was filed, the Defendant lawfully prevailed on all counts of Plaintiff's complaint- a situation paralleling a clerk's default and later application for judgment.

In copyright cases of this kind, Prenda Law seeks default judgments and maximum allowable statutory damages.  *See e.g. AF Holdings v. Lessere*, 1:12-CV-22156-UU, Doc. 22, (S.D. Fl. 2012) (seeking and later obtaining a $150,000 judgment against Mr. Lessere and an award of attorney's fees.)  Even when they are very close to a getting another default judgment- rather than continue litigation in the face of opposition- they dismiss the case.  *See e.g. AF Holdings v. Patel*, 2:12-cv-00262 (N.D. Ga.), Doc. 11 (Motion for entry of clerk's default), Doc. 13 (Motion to set aside default), Doc. 14 (Notice of voluntary dismissal).   Because Prenda Law- and therefore the Plaintiff- regularly voluntarily dismiss cases before they are subject to discovery request, it is clear that the Plaintiff is trying to extract a quick settlement- not to reach an adjudication on the merits.  *See Exhibit* "I" (non-exhaustive spreadsheet of approximately 38 First Time Video litigation based upon retrievable filings with no costs, the majority of which close with voluntary dismissals under Rule 41(a)(1) "without prejudice").

## B. AN AWARD OF FEES TO A DEFENDANT ADVANCES THE PURPOSES OF THE COPYRIGHT ACT

Counsel has reviewed portions of what he believes is work at issue in this case.[10] Based on three models on Plaintiff's website being named "Tiffany" and three different clips, the recurring story of "Tiffany" is about a young girl who has sexual relations with fruits and/or vegetables and/or household objects who also appears prone to exposing her genitalia in public locations in manner likely to violate Nevada Revised Statutes §§ 201.21, 201.22, or 201.33 (or the statutes against such behavior most states)[11]. Due to voluntary dismissal, Defendant has no way of discovering the set locations of the work. Barring any such introduction of evidence that Tiffany was under the age of 18 years of age when the film was made (also currently undiscoverable by Defendant) such a work is arguably consistent with the First Amendment and that which is afforded protection under copyright laws as applied in this Circuit. *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F. 2d 865 (5th Cir. 1979).

The Supreme Court in *Fogerty* states that "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). The 7th Circuit has recognized that an award of fees is appropriate even following a voluntary dismissal- without reaching

---

[10] Failure to provide a hash value, or a bittorrent infohash in either this case or the Miami case results in a situation where Defendant cannot identify with certainty exactly what "FTV-Tiffany" movie was allegedly infringed. Tiffany is the name of three different models on ftvgirls.com, the Plaintiff's apparent website.

[11] Plaintiff's principal also filmed himself breaking the law driving a Bugatti at approximately 220 mph on an interstate. "DPS Not Pleased with Bugatti driver going 225mph on I-8" http://www.azfamily.com/news/DPS-not-pleased-with-Bugatti-driver-going-225-mph-on-I-8-139095304.html (last accessed 5/31/2013) *see also* (http://www.ktar.com/?nid=6&sid=658773)

the merits- saying: "[Defendant] obtained a favorable judgment.  That this came about when [Plaintiff] threw in the towel does not make [Defendant] less the victor than it would have been had the judge granted summary judgment. . ." *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008).  In another case, a Defendant was the registered account holder for the particular IP address, but denied any knowledge of downloading material from the internet, claiming instead that it was her husband who had allegedly shared the copyrighted music.  *Capitol Records, Inc. v. Foster*, 2007 WL 1028532 (W.D. Okla).   She was awarded fees in excess of $50,000.00 for her successful "fact based" legal defense under 17 U.S.C. § 501.  *Id.  See also Atlantic Recording Corp. v. Anderson,* 2008 WL 185806 (D. Or. 2008).  Defendant's success on a motion for fees should not be held to a "more stringent standard than that applicable to a prevailing plaintiff . . ." *Fogerty* at 534-35.

Fees are routinely awarded to prevailing Plaintiff's on default, where upon operation of rule (clerk's default), a case is adjudicated on its merits with no further evidentiary showing or judicial ruling (other than entry of the judgment).  There is no reason why this court should not award fees under 17 U.S.C. § 505 absent actual evidence of misconduct of the Defendant or Defendant's counsel in the instant case.  The Plaintiff can provide none.[12]

Any discretionary denial of fees would not be an appropriate denial based upon an e-mail sent by Defendant's counsel to attorney Jeffery Weaver.  *Doc.* 34-1.  Attorney

---

[12] The Plaintiff could likely provide twenty or more embarrassing incidents, gaffs, e-mails, showing that Defendant's counsel is human capable of making serious mistakes.  They may show even further evidence of being brash and bluntly honest as is his nature.  Nothing will ever rise to the level of misconduct.

Weaver is not associated with Prenda Law, never has been, and would probably cringe at any association with that outfit.  Because this matter is personal, I will break voice for a moment.  Anyone who reviewed my actions, in sharp contrast to the words that e-mail, has deduced that my motivations and intent were not to harm any proceeding, harm any consumer, and certainly not to get rich.   I made publicly available legal theories that I felt were applicable to current copyright cases.  I was doing the right thing for the many, instead of the few, and admittedly making a bit of profit while doing it.  Such e-mail to Mr. Weaver was regretful in content, but framed in complete sarcasm in an effort to get him to stop harassing me in cases where I didn't represent Defendants.  The e-mail did get him to stop making telephone calls as intended, but it also drew a motion for sanctions for providing such legal forms.  I did later make a public apology to Mr. Weaver and we currently have several clients in opposition where no ill words have been exchanged.  Prenda Law (despite no association with Weaver) detailed these events in their complaint of *Perea v. Syfert*, TFB File No. 2012-00,601(4D), and upon thorough investigation, no probable cause was found for misconduct or any other potential ethical error by a committee of bar members and citizen representatives.

    C.  *Based upon Counsel's Deductions, of Prenda Law History and News Coverage, Jonathan Torres is still Unlikely to have Communicated With his Client*

       A recent a news article online  relating to Prenda Law.  *Bloomberg Business Week*, Features, "Prenda Law, the Porn Copyright Trolls" (last accessed on May 30th, 2013 at http://www.businessweek.com/articles/2013-05-30/prenda-law-the-porn-

copyright-trolls#p2).[13]   The article, at pages 2 and 3, contains portions of an interview

with a former Prenda Law client Paul Pilcher:  "Pilcher earned just under $200,000, he

says, but he never knew what was happening with the suits, how many there were, or

who exactly his company was suing. "Getting information out of [Steele and Hansmeier]

was honestly kind of painful," he says. "They claimed they didn't want me to have

records of specific things in case something happened.""  The article further goes on to

explain that Prenda Law client Hard Drive Productions client Paul Pilcher was left in the

dark, saying "'I got very uncomfortable feelings from them," he says. "But I figured,

Well, if there are judges involved, and they're ruling for us, and money is coming in, then

it must be OK."'

Defendant's counsel could never get a straight answer to as simple of a question

as to whether a settlement demand was conveyed, much less to other simple required

communications between attorney and client under the Rules of the Florida Bar 4-1.2(a).

Plaintiff's current counsel has recently filed a motion to withdraw [Doc. 36] that confirms

Defendant's understanding of the nature of the attorney client relationship and how the

Florida Attorneys were used as proxy counsel- keeping Prenda Law clients in the dark.

At the outset of this litigation, Defendant's counsel has continuously advised Prenda

Law's proxy counsels Mr. Banas, Mr. Wasinger, or Mr. Torres that they were dealing

---

[13] The process server at the beginning of the businessweek.com story, Mr. James Fogarty- who handed a copyright *Defendant* a card with John Steele's number written on the back- has recently been charged with distribution of cocaine that resulted in the death of one St. Clair Circuit Court Judge and the arrest of another St. Clair Circuit Judge for cocaine possession.  *United States v. Fogarty*, 3:13-mj-06025, Doc. 1, (S.D. Il).  There are many connections with Prenda Law to the incident via other attorneys involved including Mr. Fogarty's current defense counsel.  Weathering the storm of their business failings in Florida, Prenda Law has taken shelter in St. Clair county and split off part of operations into "Livewire Holdings, LLC d/b/a LW Systems"- Prenda Plaintiff- alleged producer of pornography.  All Prenda Law attorneys are now supposedly General Counsel of Livewire Holdings, virtually or actually locating their debt collection operations in St. Clair County, Illinois.

with serious issues and that they needed to contact their client directly to discuss

settlement, without the Prenda law filter.

### VI.  Summary of Objections to Recommendation

Based upon the foregoing evidence and filing, Defendant, renews his claim for an

award of fees under the courts inherent power, Fed. R. Civ. P. 54(d), 28 U.S.C. § 1927.

The report and recommendation as drafted should not be adopted by this court in a ruling.

It misapplies *Buckhannon* to the facts of this case by stating that an adjudication of the

merits under Rule 41(a)(1)(B) is not a "judicially sanctioned change in the relationship of

the parties."  This idea inherently conflicts with the fundamental principal that *res*

*judicata* bars any future claims.   The Plaintiff's notice itself- by operation of Supreme

Court rule- had the effect of a judicially sanctioned change between the Defendant and

the Plaintiff, adjudicating the matter upon the merits in favor of the Defendant.

The fact that Plaintiff is barred from bringing another action is a substantial

change in relationship between the parties.  Because this case was adjudicated on the

merits by operation of rule, there is no need for judicial rendering on evidentiary matters

beyond the relation of the *Miami Case* and the instant case.  As rare as such occurrence

may be, it is clear that the Defendant has prevailed on the merits of his case in much the

same way a Plaintiff may gain a clerk's default, substantially altering the relationship

between the parties.

While the lines of *res judicata* cases are instructive as to the effect of Rule

41(a)(1), any opinion as to the effect of a third lawsuit would be advisory in nature, as

Plaintiff has not initiated a third case against the Defendant.  The court should adopt such

findings that this case was adjudicated on the merits, and that the Defendant prevailed pursuant to the rule.  Further, the court should find that the doctrine of *res judicata* is only illustrative as to a what qualifies as a substantial change in the rights of the Plaintiff under *Buckhannon*.

WHEREFORE the Defendant respectfully requests that the factual and evidentiary findings of the honorable magistrate be adopted as to the issues of whether the *Miami Case* and the instant case triggered 41(a)(1)(B), as well as the legal conclusions that the instant case was adjudicated on the merits at the moment of the filing of voluntary dismissal [Doc. 29],  and that the order dismissing the case was without effect [Doc. 30].

The Defendant respectfully requests that *Buckhannon* be applied, but not as suggested by the Plaintiff and the recommendation.  This court should determine, because the Plaintiff's complaint was adjudicated on the merits, that there is a judicially sanctioned change in the rights of the parties and that the Defendant is the prevailing party.

The Defendant respectfully requests that he not be held in any such decision to a more stringent evidentiary standard in proving defenses to Plaintiff's complaint than a Plaintiff would be in proving a default.  Defendant had no opportunity to engage in discovery in this case.  Likewise, the Plaintiff has offered no evidence other than an IP address and a date and time in this case (lacking any torrent location information).  However, there is no need for the court to delve into factual or evidentiary insufficiencies of the allegations in Plaintiff's complaint.  The complaint has been adjudicated on the

merits and the defendant has prevailed on all counts of infringement and the count of negligence by operation of rule.  Plaintiff's complaint was adjudicated on the merits pursuant to 41(a)(1)(B) in favor of the Defendant, and therefore Defendant is also prevailing party under *Buckhannon*.

The Defendant respectfully requests that fees be awarded under 17 U.S.C. § 505. The respondent objects to all findings of fact regarding a deficiency of what Oppold has proved, shown, or failed to support with evidence with respect to a prevailing party analysis.   As to any prior deficiencies of evidentiary support as it relates to the discretion of the court, the Defendant hopes that this filing and the exhibits will further support an award of fees as they should be sufficiently illustrative of the fraudulent nature of Prenda Law and the vexatious nature of this litigation.

Again, the Defendant respectfully requests that fees be awarded under 17 U.S.C. § 505, in the courts discretion based upon the nature of the Plaintiff's overall litigation activities, the nature of 6881 forensics, and the nature of Prenda Law.  Based upon the foregoing, Defendant requests that the court grant an award of attorney fees, within its sound discretion.

Defendant has further indebted himself to his counsel who has expended over forty-five additional hours in document preparation, drafting, and investigation of Prenda Law.  Defendant has expended an additional twenty-seven hours reviewing the digital forensic evidence collected by Delvan Neville of Amaragh Associates, LLC and assisting in the preparation of his declaration and the compiling of Exhibits at K.  Defendant has also indebted himself to Mr. Neville's company in the amount of $4,000.00 representing

both the initial investigation, and his hours of preparation in the Exhibits and Declaration.

Defendant (*Exhibit* "L") has further incurred PACER fees of $1.20 in preparation of this

objection.  Defendant additionally requests an award of costs based on this additional

indebtedness.  Therefore, Defendant's counsel amends the previous request of $8025.00

with an award of additional sums in the amount of $18,000.00, for a total award of

attorneys fees $26,025.00, with a fee multiplier of 1.6 for a total of $41,640.00 and

additional fees and costs in the amount of $4001.20, for a total award against Plaintiff

First Time Videos and/or their agents in the amount of $45,641.20.

      Dated this June 3, 2013.

                    Respectfully submitted,
                    Graham W. Syfert, Esq.,P.A.

                    By: s/ Graham W. Syfert
                        Graham W. Syfert (39104)
                        Trial Counsel
                        FL/GA Attorney at Law
                        1529 Margaret St, Unit 2
                        Jacksonville, FL 32204
                        Phone: (904) 383-7448
                        Fax: (904) 638-4726
                        graham@syfert.com

By signing above I HEREBY CERTIFY, that a true and correct copy of the foregoing
will be served upon Jonathan Torres, Attorney for Plaintiff, First Time Videos, as he is an
ECF registrant attached to this case, and the same was provided by e-mail to his address.

I also certify that I have discussed this Objection with Counsel for the Plaintiff and was
unable to come to a resolution.